---

## Case No. 6,881.

### In re HUNT.

[2 N. B. R. 539 (Quarto. 166) [1]; 1 Chi. Leg. News, 169.]

District Court, D. Rhode Island. Feb. Term, 1869.

**BANKRUPTCY — SALE IN CONTEMPLATION OF—EVIDENCE—GOOD FAITH OF VENDEE—PROCEDURE.**

1. Congress may, within the limits of federal jurisdiction, modify or repeal the existing rules of evidence, and any such modification should not be left to inference, but should be the subject of clear and unambiguous enactment.

2. A sale made by a person contemplating bankruptcy is not ipso facto void; but if made without the usual course of trade, or is unusual in the time, or price, or character, or quantity of the goods sold, such facts as against the vendee are held to be prima facie evidence of fraud in him.

[Cited in Graham v. Stark, Case No. 5.676; Potter v. Coggeshall. Id. 11,322; Hall v. Hayner, Id. 5,933; Re Marter. Id. 9,143.]

[Cited in Washburn v. Huntington, 78 Cal. 576, 21 Pac. 305.]

3. Sales involving all the elements of fraud, so far as the vendor is concerned, may still stand, on account of the good faith of the vendee.

4. In such case the proper and only remedy for the creditors is to oppose the bankrupt's discharge, as provided in the twenty-ninth section of the bankrupt act [of 1867 (14 Stat. 531)]

5. Section six of said act contains the only provision for the determination of substantial rights by informal or summary proceedings; i. e., where the parties by consent submit to the jurisdiction, and present the issue informally to the court for its decision.

6. In cases of fraud the court may assume the custody of personal property in the hands of the vendee of the bankrupt, purchased before the vendor is adjudged a bankrupt. *Held*, in this case, the vendees having purchased in good faith, without knowledge of the bad faith of the vendor, and being able to respond to an adverse final judgment upon the question of title, that the court would not settle the question upon motion.

---

1 [Reprinted from 2 N. B. R. 539 (Quarto, 166), by permission.]

[In bankruptcy. In the matter of Josiah D. Hunt.]

BULLOCK, District Judge. This is an application in the nature of a motion by the assignee in bankruptcy, that A. Alexander and others, co-partners, &c., pay into the registry of the court certain moneys, and deliver over to the marshal certain merchandise. In support of the application, is the sworn statement of the assignee to the effect that, the day before Hunt was adjudged a bankrupt, he conveyed his stock in trade, tools, fixtures, &c., of a large value, to the said Alexander & Co.; that Hunt was then insolvent; that this sale and conveyance was made by him in contemplation of bankruptcy, and in fraud of the provisions of the bankrupt law; and was not made in the usual course of his business as a trader; and that this property, or its proceeds, which is the property and moneys before referred to, still remains in the hands of the said Alexander & Co. In further support of the application, the assignee put in proof the bill of sale of this property by the bankrupt to Alexander & Co., for the purpose of showing that the instrument of transfer, although purporting to convey merchandise of a large value, and of some variety of character, and situated in three different stores, was most general in its terms, and without particular recital or description of the property, and was not accompanied with such invoices, bills, or other documentary evidence of sale as ordinarily accompany transfers of this character, from one trader to another. The respondents, Alexander & Co., do not controvert the material allegations of the assignee, but set forth, under oath, as cause why the interlocutory order asked for should not be made, that they purchased the property in question of the bankrupt, before he was adjudged such, in good faith, for a valuable consideration, and at a price, though somewhat less than its value, yet not so grossly inadequate as to be a badge of fraud on their part; that, at the time of such purchase, they had no knowledge of Hunt's insolvency, or that he contemplated bankruptcy, or that the sale so made by him was made by him to defeat, or would have the effect of defeating the provisions of the bankrupt act; and (which is not controverted by the assignee) that they are responsible, having ample means to answer any judgment or decree that, upon final hearing, may be entered against them, upon a trial of the issue of title.

It also informally appeared at the hearing, that a portion of the stock in question was now the subject of a suit or suits in replevin, by creditors claiming both, adversely to Alexander & Co., as well as the assignee, and that its actual possession was not now with the respondents. It is not averred in the record, nor is proof adduced by the assignee, that the respondents, Alexander & Co., at the time of purchase, had reason to believe

the bankrupt insolvent. They deny, upon oath, any such knowledge. How far such an allegation, followed by corresponding proofs, may be evidence of the gravamen of the case upon an issue of title, I will not undertake to say, as this application does not involve that issue absolutely and ultimately. I have not thought it expedient to rule the motion, upon the somewhat technical, because amendable ground, of the materiality or immateriality of such allegation; and especially since the assignee claims that the sale in question, not being in the usual course of business, no title passes to the vendee of the bankrupt, except and until this legal presumption is overcome by proof. An examination of the law will, I think, show this not to be a sound construction of the provision referred to. Congress undoubtedly may, within the limits of federal jurisdiction, modify or repeal even the existing rules of evidence; but since these rules have been so long established, are so reasonable, and serve so wise a purpose in the elucidation of truth in the administration of justice, any such modification should not be left to inference, but should be the subject of clear and unambiguous enactment. The thirty-fifth section of the act does not declare any sale by a bankrupt, or a person contemplating bankruptcy ipso facto void; but the sale, if to a pre-existing creditor, must be made within four months; if to one not such a creditor, must be made within six months, before petition is filed; and must be to a vendee who then, that is, at the time of purchase, has reasonable cause to believe the vendor to be insolvent, or to be acting in contemplation of insolvency, and who has reasonable cause to believe that the sale is made with a view to prevent the property from coming into the possession of the assignee, for the purpose of equal pro rata distribution among all the creditors of the bankrupt, and so defeating one of the main objects for which this law was enacted. Such a sale is void. And if the sale is made, not without the usual course of general trade, but without the usual course of trade of the debtor—that is, if it is unusual in the time, or place, or price, or character, or quantity of the goods sold, or in other respects, having reference to the then business of the vendor; such facts, as against the vendee, shall be prima facie evidence of fraud in him; in other words, in the absence of counter testimony, it will be presumed that he, at the time of purchase, knew that the vendor was insolvent, or was contemplating bankruptcy, and that the vendor was making the sale to prevent all, or some portion of his property, as the case may be, from passing to his assignee, and so evading and defeating the provisions of the law. But upon an issue of title, between the assignee and vendee, it would be first incumbent upon the former to show a sale, and within the time limited, and its unusual character, before the pre-

sumption of fraud would arise against the vendee. Cases may occur of sales involving all the elements of fraud, so far as the vendor is concerned, and yet stand, by the palpable presence of good faith, in the vendee. And in such cases the proper and only redress for the creditor is to oppose the bankrupt's discharge as provided in the twenty-ninth section, and subject him to the penalties provided by that and the forty-fourth section; for it does not follow, especially in cases of involuntary bankruptcy, that the instituting of proceedings necessarily involves a discharge of the bankrupt.

Having thus reviewed some of the questions incidentally involved and discussed at the hearing, I now proceed to consider the more distinct issue which the motion presents, and it is this: Shall the court, by summary order, assume the custody of moneys and personal assets, now in the hands of the vendee of the bankrupt, and purchased before the vendor is adjudged such upon the precise state of facts existing here, as shown by the ex parte proofs of the litigants, and anterior to a trial upon the issue of title. That the court may, in a proper case, exercise such control, was substantially conceded upon the argument—I, therefore, in passing, only remark, that it is a power necessary to the due administration of the law—it is a power impliedly, if not expressly granted in the first section of the act. It is a power impliedly granted by the twenty-fifth section, though not to be exercised under that section in a given state of case, which may or may not arise. That, in a proper case, this power should be exercised, and if need be, in this form of procedure, there can be no doubt: as when, from the nature or situation of the property, or the character of the alleged purchaser, or from both causes, the safety of the fund calls for the speedy intervention of the law. The bankrupt act necessarily vests a large measure of discretion in the court or judge administering it. This discretion, however, is not a wanton power. It is not a power to order this or that summarily and upon motion, because it may. Neither is it the power that makes the court the counsel, or advisor even, of the assignee, to enforce his rights, and especially not to prejudge questions that may afterwards come before it for adjudication. It is a judicial discretion to be carefully exercised in view of the rights of all, to be exercised so far as may be in accordance with sound precedent, and is so to mould itself to, and meet the necessarily new questions, not of practice alone, but of right, as they arise, that while on the one hand it is administering this law in the true intent and spirit of its enactment, so as to effectuate the really equitable and beneficial ends it seeks to attain: it is not, on the other, abrogating those useful and striking analogies so well known to the profession, nor those rules of practice and judicial pro-

cedure now so interwoven with our system of jurisprudence as to have become almost an inherent and essential part thereof.

Assuming all the facts put in proof by the assignee to be true, and also their permanency and materiality, it still appears that the property in question came to the possession of the respondents before an act of bankruptcy, adjudged under a purchase, for a monied consideration, paid at or about the time, and one not by any means grossly inadequate; that only a part of this property is now in their custody, having been removed therefrom by the legal proceeding involving its title. The . respondents swear that they bought it in good faith, and did not know of the mala·fides of the vendor, and that they are able to respond to an adverse final judgment upon the question of title. The forty-second section provides generally for the taking possession of the property of the bankrupt. General order thirteen, as recently amended, and undoubtedly so amended and adopted because of the too general terms of the original order to meet vexed questions of possession pendente lite, provides a particular course of procedure in all cases of controverted possession, both when the property has already come to the hands of the marshal as when it is in the hands of the adverse claimant, and the assignee or petitioning creditor seeks its possession. It is a course of procedure in principle familiar to the common law in actions of replevin, and undoubtedly borrowed from it, because of its analogy and fitness. It is an appropriate and just course of procedure. By the bond it requires it makes the provisional custodian careful of the right. With this remedy prescribed, and in a case where no haste is required, where no risk of irretrievable loss is shown or suggested, to change the custody of this property by summary order upon mere motion would be almost to create rather than administer a remedial process.

A review of the bankrupt law as a whole, and of the general orders promulgated under, .and in pursuance of it, and to carry its provisions into effect, will show that ample as are the powers vested in the courts and in the judges who are to administer it, these powers are to be exercised as far as may be, and when no special provision is otherwise made, in accordance with settled and well-known forms of judicial procedure. The thirty-second general order provides that the rules of the circuit and supreme courts, respectively, at law and in equity, shall govern the practice and procedure in this court in administering this law. The amendment to this general order empowers this court not to repeal, but .to modify these rules, to speed the progress of cases here, with the further power to make special orders to meet the exigencies of a particular case. .The tenth section of the act provides for the taking of appeals, and the suing out of writs of error.

The twenty-sixth general order prescribes that such appeals shall be taken, and such writs sued out, in the modes now provided by law or by rule. The language of the fourteenth, sixteenth, and thirty-fifth sections clearly implies that an assignee in bankruptcy shall establish his rights and enforce his remedies as other creditors establish and enforce theirs. And the fair construction of the first· section is that, in cases of disputed title, unless it is otherwise specially provided, the proceedings shall be as in the circuit court, under the second section, in equity and by bill or petition. The tenth section of the act imposes upon the judges of the supreme court 'the duty of framing general orders,' to regulate the practice and procedure of the district court in bankruptcy. No order has been framed to regulate the course of procedure in cases of disputed possession, pendente lite. There is, so far as I am aware, but one provision in the whole act for the determination of substantial rights, by informal or summary proceedings, and that provision is found in the sixth section, where the parties,·by consent, submit to the jurisdiction, and present the issue informally, so far as the mode of procedure is concerned. to the decision of the court. For these reasons the motion in this case is overruled.